Rob Harley for Appellant. My argument would be brief. The prosecution argued and the court accepted down below this free pass rationale for adding a 46-month federal sentence fully consecutive to a 16-year state prison sentence. And now on appeal, the prosecutor is arguing that the plain error analysis applies. I think in both of those arguments there are certain flaws because I'm relying on 18 U.S.C. 3553 C-2 as opposed to 18 U.S.C. 3553 C-1. And there's a big difference because C-2 clearly applies in this particular case because this sentence is way out of the guideline policy range, where it is – If the defendant got a pardon on his state conviction tomorrow, how much time would he serve? I'm sorry, say that again, Your Honor? What if he got a pardon on the state conviction? Well, if he got a pardon, he wouldn't be any more time in the state system. He'd be automatically sent over to do his 46 months consecutive. Would that be a reasonable sentence, 46 months? Well, it's within the – I would certainly say it's reasonable, 46 months. Within the guidelines, right? Yes, sir. Okay. What's wrong then with putting one on top of the other? That's exactly the discretion that's given to a trial judge in the guidelines. I agree, but when you do that, it essentially results in a sentence way out of the guideline range. Now, wait a minute. You've got two different criminal events. Yes, sir. You've got two different convictions. Yes, sir. He's going to do his time on one. Yes. He might get a pardon. He might get parole. He might get early release. Any of a number of things can – he might die. Any of a number of things can happen, but he still hasn't paid the price on the second offense, which is this sentence, right? That's true. So if he completes the first, regardless of how it terminates, he still is faced with the second. So I don't see what's wrong with that, and it's within the guidelines. I don't know why we're here. Well, my argument is when you tack on, I mean, 46 years to 16 years in a state prison sentence, which he's going to do at least 85 percent because it's a strike within the California system, that means 238 months as opposed to 46 months. So I think the sentencing law, the policies underlying the sentencing law, especially those policy statements in 18 U.S.C. 3553, require the court to not just articulate the general 3553A factors and get specific, i.e., enunciate or articulate some of the factors contained in the sentencing guidelines, section 5G13C, where at least it's evidence to this court that he took into consideration whether that 16-year state prison sentence was determined. Indeterminate, paroleability, whether there's likelihood of a pardon, as you brought up, the length of the undischarged sentence, whether or not it's a state or federal court sentence, i.e., if this is two separate, fully consecutive federal robberies, the low term on that would be 92 months. Because he's tacking it on to a 16-year state prison sentence, it goes up to 238 months. So there appears to be a significant, huge disparity, and I think that the sentencing law requires a judge under these unique set of circumstances to at least engage in specific reasons. And I emphasize the word specific reasons because under C-2, that's a requirement of a sentencing judge when it goes outside the policy range guidelines is to specify the reasons. C-1 makes no such requirement. All the judge has to come up with is some sort of generic reason. The judge started out by saying he was prepared to throw the defendant away. It was going to give him the top end of things. Fifty-seven months. Yes, sir, he did. Fifty-seven months. And then he listened to him, and he was impressed by what you had to say or the defendant had to say, and he said he wanted to give him another chance. So he was going to give him a lower sentence. So he gave him 46 months. Now, everybody agreed that nine months should be knocked off anyway because of the time he'd already served. Both you and the government, I think, agreed that nine months should be taken off, which means he really, after saying he really wanted to give him this break and give him another chance, as he put it, all he actually knocked off was two months. Is that right? Was there some miscommunication or something that happened that made him reduce it only two months when he said, you know, I'm not going to throw it away, I want to give you another chance? Why am I not adding this right? I'm not sure. You know, I was a little bit unclear. I was down there with the judge. And the only thing the judge did, at least in my estimation, was knock it down from 57 months, which is the high end of the guideline range, to 46 months, which is the low end of the guideline range, and which was consistent with what the PSR recommended. So as far as the nine months fit in, that you had the discussion about he's already done time and he had to be given credit for nine months. It will be reduced by that, and the prosecution agreed with that, as I recall. Well, that came up in the dialogue. But, again, I'm not sure how that played out. Well, wouldn't that have reduced it from 57 to 48 in any event? Well, yes. But I like 46 better. Well, I know. But when he said, I'm not going to throw it away, I'm going to give you another chance, was he talking about only reducing it by two months? You know what, Your Honor? He was unclear. I still don't know exactly. Well, I just wondered whether he really did what he intended to do, because, you know, it was an interesting sentencing. It was not a normal thing where a judge sort of has an idea and implements it or follows a report. He wanted to do something with the sentence. He was starting out and saying, I came to this problem wanting to give him 57 months, and after hearing all of this, I don't want to throw him away. I want to give him a chance. And then it looks to me like all he did was inadvertently only knock off two months. But, I don't know, maybe that's not correct. Maybe it just seemed to me something got lost in the imposition of the sentence. Well, there was a lot of dialogue about how much he was hurt, because there was a detainer on him. I mean, he wasn't getting his good time work time credits while he was sitting around for 26 months in federal custody serving his time on a state prison sentence. So there was a lot of dialogue about that, and none of this information was really clarified in the PSR, because we don't really know, and it wasn't addressed in the PSR, how much he was really actually penalized by sitting in the federal system and being unable to earn his good time work time credits during that 26-month period. Well, I thought there was an agreement on nine months. Yeah, I don't think I agreed to anything. I just wanted, you know, something less than fully consecutive. No, no, I don't mean that that should be the sentence, that it was nine months that he had lost as a result of this in credits, and that that should be taken into account in the sentence. Your Honor, I don't know how that came up, and I can't answer that, because, I mean, I am basically a state court practitioner, and I just don't know how to judge, and I know Judge Carter, he was a state court judge. I'm not sure how he arrived at that nine months. It was just a rough calculation. I don't know. I can't answer that question. But my argument would have been I would have gladly have suffered a departure above and beyond the 57 months rather than have, you know, the low end in the guideline range and then made fully consecutive to a 16-year sentence. And my argument is when you're talking about and you're assuming it was just, you know, going above the, it was a departure upward, you know, the judge would have had to state more specific reasons than he did in this particular case. So I'm arguing when you jack a sentence up from 46 months to result in a 238-month sentence, when you compute both of them together, you know, at least we deserve some reasons. You always add the numbers together. What if the other, the state crime was something completely different, like child molestation or arson, or would you still say, I mean, what is the relevance of the state sentence? I mean, we want to add them together and say, you know, this is a super sentence. But they're not. They're for separate crimes or separate events. And the judge here said I'm not going to give him a free pass on the federal crimes. Why is that enough? Well, if it's, I'm just arguing that I think there could have been a little bit more compromise. In other words, he could have just sentenced him less. He could have, but he didn't. When is he eligible for probation in the state system? I'm sorry, what? When is he going to be eligible for probation in the state system? He'll never get out on probation. He will be eligible for parole after he does 85 percent of that 16 years. Okay. So, and that 85 percent of 16 years is going to be, I think I calculated in my moving papers, 12 to 14 years before he's eligible for release. And then he's going to be turned over to the federal authorities to start his 46-month consecutive sentence. And I just think that the court, when you consider the draconian increase as a result of his fully consecutive sentence, owed this court an obligation to at least address some of those concerns in 5G1I3C, indicating the reasons why it was fully consecutive as opposed to partially consecutive. Because I think, I mean, supposing he's fully rehabilitated in 12 to 14 years when he gets out in the state system, only to begin starting his federal sentence. That happens often when people come out of state prison. We see that a lot, where they come out fully rehabilitated. You got me there, Your Honor. I concede. I have no response. But I just, my only concern is I just think there should be a little bit more clarity and a little bit more specificity in the record. And, again, I'm relying on the distinction between C1 and C2. C1 requires basically reasons. A free pass is a basic justification. But here we're talking about a C2 situation where the law is very clear that the court shall specify or give specific reasons, not just generic reasons like in C1, specific reasons in C2. And because this is way out of the guideline policy range, I would urge the court to consider the fact that this is a C2 situation that requires specific reasons. Just generic reasons, mirroring the 3553A factors, is insufficient. And then also no plain error analysis applies to this situation either, because there is a Cajus v. Migbell, 444 F3rd 1173-1178 at Note 9, and it talks about Vensey 169 F3rd 611-613, indicating that if C2 applies, the plain error analysis does not apply. So I don't have to make that high hurdle of establishing plain error. It's just an abuse of discretion standard. Because if I have to make the plain error standard, I concede or no, it would be problematic for me to prevail. Other than that, I submit and escort as questions. Good morning. May it please the Court, Anne Gannon on behalf of the United States. As the Court has correctly noted, the consecutive sentence imposed in this case was due to a completely separate conviction, the federal conviction in this case. And as a result, the district court found that a reasonable sentence was 46 months imposed consecutively to the 16-year term of imprisonment imposed by the state court. This was not an upward departure, as the defendant would like you to believe and to adopt in order to rationalize their argument that 3553C2 should apply. That's just not the situation in this case. The defendant would also like this Court to adopt a more formal and almost ritualistic approach to sentencing, which neither the guidelines ---- Ritualistic, like applying the guidelines, whatever it happens to say? Your Honor, ritualistic. That's when he said, well, 42 months, oh, it's 46 in the guidelines. Well, that sounds good. Does that sound ritualistic? Your Honor, no. Not calculating what really seems to be an appropriate sentence, but saying it's been calculated somewhere else. I'll just apply that. That sounds fair? Your Honor, I think that's an appropriate consideration of the facts. Sounds pretty ritualistic. I don't know. What do you consider ritualistic? Your Honor, when I'm referring to ritualistic, which is what the Fourth Circuit mentioned in the Davis case and has also been commented on by the Ninth Circuit, is some kind of rote recitation of the factors. And this Court has consistently rejected that approach and gives the district court the ability to review cases, and if the appropriate provisions are before the court and the record indicates that the court considered the facts underlying those provisions, that the district court properly discharges the obligation. I think that's what happened in this case. The pre-sentence report cited 5G1.3. Defendants cited 5G1.3 at length in their sentencing position paper. The government even cited 5G1.3 in its position. I think the fact that the district court did not specifically cite that particular guideline provision nor go through it systematically does not indicate that it did not properly consider the factors. The first factor in the guidelines is consideration of Section 3584 regarding multiple sentences, which then goes back to 3553. And the record is clear that the district court considered that and considered the nature and circumstances of the offense. The district court specifically remembered the co-defendant in this case and the personal characteristics of the defendant. The court recognized the family in the courtroom, listened at length to the defendant's comments about his rehabilitation, and the court proceeded to go through the other factors. In addition, as this Court has mentioned, the district court took additional time to calculate what the good-time, work-time credits would be the defendant had potentially lost by being in Federal custody on a writ for 26 months prior to the imposition of the Federal sentence. The district court was not even required to make those calculations. While it's certainly advisable and the government concurred with that approach, the district court was not required to do that. And, in fact, as the record indicates, the district court gave a generous estimate, I believe 273 days, which is how it arrived at approximately the nine months, for that calculation. In fact, as Appellant Counsel noted today, that credit should only be approximately 15 percent. So as Judge Reinhart noted, there would be an additional two months which the court came down. I think this Court should look at it as the totality. Both giving the credit for that time was a consideration that the district court made after listening to the defendant. And, in addition, he came back down all the way to where the probation and the PSR had recommended, which was the 46 months. This Court has never required district courts to recite specific provisions if they're advisory, which is what the guidelines are in the situation. Section 5G1.3c was a policy statement even before Booker, and essentially nothing has changed since then in terms of what a district court is obligated to do when considering those factors. And also 3553a. This Court's noted in the Nix decision and other decisions since Booker that it's not requiring the district courts to go through as long as the record is clear that the court properly considered the factors. I think any discussion that this imposition of sentence was somehow an upward departure or represents disparity in comparison to what the co-defendant received in this case should not be adopted by this Court because the record just must not reflect those factors. The district court had a full record before it. It had all the applicable law before it. It had a detailed pre-sentence report that it referenced numerous times in the record and, in fact, complimented the probation officer for its diligence. And in the end, decide that this was a reasonable sentence under the applicable law, set forth those reasons, and for those reasons, the district court's decision should be affirmed. Your Honor, with that, I'll submit unless there are any other additional questions. Thank you, counsel. Your Honor, I'm not suggesting this is an upward departure. I just use that by way of analogy that I think the record would require more than just a recitation of 3553A factors and then the concern about giving the defendant a free pass in order to justify an upward departure, i.e., 58 months. There'd have to be more of a record made in this particular case. So I think when the practical effect results in an upward departure to 238 months because of the fully consecutive sentence, I think the district court down below owes the record an obligation to recite more criteria to justify the specific reasons mandated by C-2 as to why he gave a fully consecutive sentence that results essentially in a 238 commitment. Other than that, I'm prepared to submit unless the court has questions. Thank you, counsel. Thank you. The case just argued will be submitted. The final case of the morning is Seiko Epson Corporation v. Star Tech International Computer Supplies.
judges: Beezer, Reinhardt,kozinski